at balance. Mr. Rosenzweig for the abatement, for the good hand, for the evidence. Good morning, counsel. Good morning, Your Honor. May it please the court, it is infinitely more difficult to find a valid waiving based on a silent record. This holding from the could guide the court in the resolution of this map because as to the single most salient significant fact, whether or not the district court had the authority and power to vary from the guideline recommendation upward, this record is absolutely silent as to any advice to Mr. Hood as to that possibility. Why do you say can't vary from the guideline when you're hitting the statute, you're still within the statute? The guideline recommendation here, Your Honor, would have sentenced him to three months. And it's a recommendation. That's right, but he was never advised, Your Honor, that those recommendations were not binding. Generally, when you have, for example, a sentencing guideline and there's a negotiated plea, then that's the time at which the judge would understand specifically that the defense counsel and the prosecuting authority have negotiated a sentence and then if the judge does not accept that sentence, then perhaps the admissions, for example, guilty plea and or supervised release can be withdrawn because the judge didn't accept the negotiation. Here we have two parties agreeing to a recommendation and then the judge informing Mr. Hood that he could go up to the statute. With respect, Your Honor, that's the timeline that you just posited is inaccurate. Had the district court said before Mr. Hood admitted to the violations, you do so knowing that there's a possibility that I might vary upward, we would not be here. But in fact, the colloquy with Mr. Hood in which he admitted the violations of the supervised release was non-existent and it was only after he had admitted the violations that the district judge then said, well, you know, I am considering rejecting that recommendation. Now, if it's a prosecuting agency, they have to give the defendant notice that they would seek an upward variance. But what about the judge? Your Honor, this case is almost exactly like LeBlanc, which is the first certain, the seventh certain case in which, as the court there said, much to everyone's surprise, the court went up from an 18-month recommendation to the 24-month maximum. And that was in an instance in which it was clear that the defendant did not understand the possible penalty he faced by stipulating to the violation. Thus, he was unaware, unaware of the true consequences of relinquishing his rights. Indeed, Mr. Hood's own experience is that everything that had happened to him before this event suggested to him that the guidelines were indeed binding, or at least a cap, at his first sentencing, at his first probationary location. In every instance, he was told in effect that the guidelines were maximum. Indeed, the probation officer said exactly that at the July 6, 2022 hearing. She said his max is six months. Now, she was wrong, it was only three months, but he was told that that was a maximum. Being advised of that, informed to his judgment, he went into that hearing understanding that there was going to be a joint recommendation for three months and anticipating that that was what the court would give him. He was unaware of the least... You know, at the end of the day, you're talking about a defendant who admits to the conduct and they were given the opportunity of her charge and then admits to it, but then doesn't like the sentence. We're talking about a defendant who relinquishes rights to present a defense to those charges in exchange for what he thought was a bargain. You're absolutely right, but that is true of every sentence, Your Honor, in criminal court, and yet we would not say that a Rule 11 colloquy, for example, in a different context, could be disposed of simply because of the fact that the a relinquishment of those rights. Quite to the contrary, we say that a defendant, before he relinquishes rights, must hear under the totality of circumstances, be aware of that which she is giving up. Thus, for example, in Correa-Torres, where the defense counsel said that there was no conduct, there was no injury as to rights of guilt, and yet notwithstanding that, there was no finding or determination of the knowing and voluntary nature of the relinquishment, there was no clarity that the defendant understood the consequences of relinquishing his rights. The First Circuit there had no hesitation, or little hesitation, I should say, in reversing the sentence and remanding this case. I would respectfully submit there is no case that you can present in which a defendant, without any colloquy whatsoever, the entire proceedings before this hearing were six lines of discussion between the court and Mr. Hood's defense counsel. No colloquy of any sort, the district court went to the, tell me your violations, without so much as an advice. Now, the government will point to other circumstances. Six lines, no, no, I'm interrupting you, that's okay. Six lines of testimony in this, or colloquy in this hearing, but there was a motion by the probation office, and then there was a hearing, an initial hearing before the magistrate judge, and then there was a first hearing before Judge McFadden, and the defendant had in all of this. If we look to the entire sequence, it seems pretty clear he has a, is a very good sense that his upward exposure is 24 months. That's what they say time and again. They say this is the guideline range, and the statutory maximum is 24 months. With respect, Your Honor, advice as to the maximum is, in our judgment, in my respectful judgment, cuts the other way. I know, for example, that this court may extend my oral argument the next hour if it chooses to do so, but I have absolutely no expectation of that. Even in my experience, I expect to go 10 minutes, maybe 11 if you want to, if you want, if you want to give me an extra minute. Advice as to the statutory maximum is, is, is a factor in the totality of the circumstance, but in general, the advice as to what the actual sentence will be, the consequences of relinquishing one's right to contest the alleged violations, is precisely what is most important to any criminal. And you don't think the concern, what about the concern Judge McFadden expressed at the end, end of the first hearing? Parties are saying, we're good, stipulate to one violation, he gets three months, and Judge McFadden has a lot of concern and says, no, no, I want to look at, I want to look more broadly at this defendant's violations. You better go back and figure out what you want to admit, and you better go talk to your lawyer. I think that's a fair point, Your Honor, but with respect, the main part of Judge McFadden's concern was the allegations of another pending charge in the, in the, in Fairfax County, Virginia, not with respect to the other technical violations. Had there not been... That's part of it, but... Well, with respect, Your Honor, had he not, had it only been six technical violations, my sense is that Judge McFadden would have been happy to take one or even two and be done with it. He was concerned most principally with the Virginia charge, which ultimately the government chose not to prove up, and so as far as we can tell from the record before us, has absolutely no, should have absolutely no bearing on the sentence that it, that it, that Mr. Hood would receive. To be fair, I think you're right that he wanted to hear more about that, and had he heard that, and that had, and had that resulted in the upward variance, I, I think we'd be in a very different place. You don't dispute that we can look, or do, or maybe you do. Can we look to everything that happened in the prior proceedings, and your position is you can do that, but still not sufficient knowledge, or are you saying, let's, let's go full or rule 11, and impose that requirement on the revocation, and say it's got to be in the four corners of that hearing? We, we are not saying that, Your Honor. Our, our position is, is that this, so this just comes, the totality of the circumstances, just comes down to a dispute whether, how we assess everything that happened. That would be fair, yes. I see I've got only 48 seconds left. But the magistrate judge did tell him the max sentence. And would you agree that totality of the circumstances would be the lens in which we look at this? Yes, Your Honor. Our contention is that our, our submission is that advisal, being advised of the max sentence is inadequate to advise a defendant of the consequences of relinquishing his rights absent of, in addition, a statement, I'm not humbled by the guidelines suggestions, I may choose to depart upward. Okay, so I'm confused by your answer, because you said totality of circumstances would be the lens, but then you're narrowing me as to what I can look at. No, Your Honor, I, totality of the circumstances of this test, I think the failure here to advise the possibility of an upward guideline departure means that under the totality of the circumstances, this waiver was not knowing involvement. Well, there are two different issues embedded in that. One is what, what must be known? Does that include the possibility of an upward variance from the guideline range? And a second is, um, where can we look to answer that question? As to the second, on the second, I think we've all agreed we can consider everything that happened. I, I, I concur, Your Honor. We agree with that. It's as to the person, to put it bluntly, Mr. Hood went in there expecting to be out in three months and home for the birth of his daughter. Uh, that is, that is, uh, that is the expectation that he had, and he relinquished his rights with that expectation. And nothing that the district court judge said, and frankly, nothing that the magistrate judge said, told him anything other than anything that that was not a possibility in light of the probation officer's statement, that it was a maximum sentence, a maximum time of six months in light of the joint recommendation of all the parties within three months. And is that what you contend is plain error in the case? Yes, Your Honor. This is a, the failure to provide the, uh, to provide a warning of this sort is a due process violation. And then, in our view, under Olano, any, any, uh, uh, violation of a rule of law of that sort satisfies the plain error. I haven't thought this through, and you have a lot of experience in this area, but doesn't it seem a bit, um, awkward to, um, find the standard is one of fatality of circumstances, that the error is plain? I'm not sure I understand your question. I would certainly think that had to, to, to, uh, to reverse the question, Your Honor, had none of the other colloquies hurt, happened at all, at the first, uh, the preliminary hearing, the preliminary revocation not happened, and had he simply walked in, um, and been the judge, and, and only the last bit had happened, the six lines before they took his, his plea, uh, and had it not been objected to below, I would think that that would clearly be a plain error, notwithstanding the fact, um, uh, notwithstanding the fact that it would be a totality of the circumstances test. But, but in that circumstance, the totality is irrelevant. You're saying that, that, that subset of the totality, that one thing is a error by itself. That, yeah, that would be our, our argument would be that this, this error falls within that subset. In both your briefs after laying out circumstances and so on, you, you say that the error was plain, but no authority cited in either of the five briefs. As far as we can see, Your Honor, the, the other circuits that have addressed this issue haven't spoken to this directly, both the LeBlanc and the Correa-Torres case involved reversals in which there was apparently no objection below. So though they did not speak to the, to the standard review, one assumes it would have been plain error. Uh, I can find no case law that is directly on point, so I can't point you to that. Thank you. I apologize. Thank you, Your Honor. Just to, to prove your hypothetical, we will extend the time to give you some rebuttal. Good morning, Your Honor. David Goodham for the United States. If I could, I'd just like to address a couple of factual points and then a legal point relating to the question of the upward variance. And in particular, I'd like to hone in on, um, my opponent has repeatedly emphasized the probation officer's declaration of the initial appearance. I just want to make sure the court is aware of the full quote. This is at page 8 of the, the, uh, July, um, 6 initial hearing. The probation officer says up to 6 months incarceration is his max per the guideline, but then the next sentence, but again, he does say he's 24 months per statute. Um, so I just want to make sure that everybody's on the same page with respect to what the defendant was on notice of. Um, as to the issue of whether or not he had an understanding that a variance was a possibility, as we've described in our brief, we think there are several indicia demonstrating that he did. Um, number one, um, he, of course, was a beneficiary of an outside guideline sentence previously. Number two, the petition demonstrated that, um, it explained, um, the guidelines are just one factor in the whole 3553 analysis. And of course, we also had his guilty plea and the plea agreement itself. Um, uh, it's, um, he declared, declared that, and this is ECF number 10 at age five, neither the, neither the government sentencing recommendation, nor the guidelines are binding on the court. But I think the actual best evidence that he had an understanding of that a variance was a possibility is emanates from the pages, a five and a six of the actual final revocation hearing right after the, uh, judge does a direct colleague with defendant. You admit X, you admit Y, you admit Z. Um, the court turns to the probation officer and probation officer declares. I want to make sure everybody, this is at page eight, five, all parties are aware of what penalties Mr. Hood is facing. I want to make sure we're all on the same page and then lays out the guidelines. All the council would agree with the guidelines calculation. Then the next page is a critical one. Uh, on page eight, six, the probation officer says, however, I do want to make the court aware and all the parties aware that there is a statutory maximum of 24 months. The court can seek to use if he feels that the violations are up to the point where Mr. Hood needs to be punished up to a maximum of 24 months. Should we disregard that because it came after the admissions? I think no. I mean, it's crystal clear, but you're putting the defendant in a little bit of a tough position, right? He's just admitted to everything. Everyone in the courtroom knows he did it. Sure. And, and then you advise him that he can take it back. I cited as evidence, um, after the fact evidence demonstrating that he was not surprised, um, that an upward variance was a possibility. If you look at the indicia that precedes his admission, and then you look at this after his admissions, he doesn't express any surprise. He doesn't tug on his counsel's sleeve. He doesn't lodge any objection. And I think the other thing that this record demonstrates, this was not necessarily a shy defendant. The extent that when he disagreed, for example, with his counsel's declaration that he was conceding a violation number five, when the court asked him directly, the defendant actually said, well, not necessarily admitting that and gave this, uh, uh, explanation relating to medical marijuana. My point being that he wasn't shy. If this came as a surprise to him, um, he probably would have said something. So it's after the fact evidence for sure. But if he had said something, so as he said, oh, wait a minute, I didn't know that. I don't want to admit to anything, but these are all technical violations. Aren't they all within the personal knowledge of the PO? Yes, absolutely. Absolutely. And, and I, I think, I think it would have been very easy for the government to move those up. I do think though that the, his silence after his admissions gets to the legal point I wanted to make. Um, one of the questions posed to my opponent was, does the district court have a duty to, in, uh, impart the possibility of upward variance to a defendant? And, um, this, the Supreme Court has said no, uh, in the United States versus Irizarry, and this is 553 U.S. 7808 and jump site 714. Uh, Supreme Court has said there's no due process requirement for notice of an upper variance. The guidelines are discretionary. The court said, and this is it sentencing. It was already applies to initial sentencing. I would suggest if you're already saying there's no due process, right? With respect to initial sentencing. And we certainly know what the answer to the question is at revocation sentencing, which all courts agree is, um, a more informal process than original sentencing. Um, supervised release is a conditional interest. Um, it's, uh, not a new offense. If you have, uh, been found in a violation, it's a continuation of your original sentencing. That's why the courts outside of this jurisdiction are all comfortable with is a totality to circumstances approach number one, but number two, and more informal process at the revocation hearing itself. In some of the cases indicate that there's just a knowing and voluntary, um, waiver, but, you know, it also, uh, other cases mentioned knowing voluntary and intelligent. So do you have any, um, suggestion as to which way for us to go in that regard? I, I think, I think that, I think that there are variations on a theme. I think what we do know is that the courts do not want to dictate the necessary procedures and the necessary call it week. But should we be dropping the intelligent? I frankly, I don't see much space between intelligent and knowing that, um, to the extent that we know that you don't have to have a checklist of every single procedural, right? That can afford the defendant. Um, you just haven't have to have an understanding that, um, this was a knowing admission, um, and a voluntary one, um, and that you generally understood your rights pursuant to rule 32.1. Um, and, and look to be clear, um, as the other courts of appeals have regularly admonished, it's much simpler if a couple of questions are posed by a district court judge, um, to a defendant at the outset of a rule 32.1 hearing. That is, you know, there are many variations that would have made this appeal a lot simpler. Um, certainly, um, those admonitions make sense because there are a lot of resources devoted to sort of finding the record to figuring out if something's knowing and intelligent and voluntary. Those inquiries can be curtailed, I would suggest, if district courts do make those prophylactic questions. But the point that courts of appeals are very clear about is that it's not required. So your position on, on knowing, to say it has to be knowing, it begs the question of what has to be knowing. So your position is, as a matter of due process, the defendant need not know the possibility of an upward variance from a, an advisory guideline. That's, that's my understanding of, of the implications of Irizarry for sure. Does, does the defendant need to know anything about his potential exposure? I, I think, I, I've seen the cases referred to, and particularly I would point the court to United States versus LeBlanc from the totality circumstances analysis. It's perfectly understandable that a consideration would be an understanding of whether or not the defendant knew the possible sentence. It makes intuitive sense, but it's not on the list of items enumerated in 32.1. No. B2. Right. I think it naturally follows if, if you would, from the fact that we're talking about liberty interest here. And, but for sure, if you look at rule 11. So, yeah. So, okay. So I'm just trying to figure out what is required sort of short of, of possibility of a variance. Like is knowledge of stat max enough? I, I, I, I. Guideline range plus stat max without a statement that the court can depart. I, I think that would certainly suffice. That's the possible. Stat max only. That's the possible sentence. Is sufficient. Yes, I think so. And again, this emanates from my understanding of the Ari. There's just not the necessary detail that rule 11. I mean, if you look at rule 11, it's very detailed about the sentencing factoids, if you will, that must be imparted to a defendant. Which I was thinking of going down that route. But as I said, 32 doesn't say anything about exposure. Right. And I think the courts have, again, relating to the informal process. I think the courts are comfortable with if the defendant understands a possible sentence. And that consequence, that liberty interest, and the courts are comfortable with a conclusion of knowing involuntary. Is there a distinction between having a colloquy versus the totality of circumstances? The courts have been very reluctant to demand an affirming, an affirmation and direct affirmation from the defendant. Is it is it laudatory? Something that we should we should hope happens for sure. But, you know, we've cited several cases, Farrell, Taylor, I believe, and Tapia Escalera, where there was absolutely no colloquy with the defendant. And the court was still comfortable with the notion that a totality of circumstances approach suffice to show knowing involuntary. I think it follows from the nature of the revocation hearing, that the liberty interest in question is significantly attenuated because we're operating within previously delivered conviction and sentence. Yes. And the Second Circuit makes that point in Polensky. You've already had your initial sentencing hearing. You've already been apprised of numerous facts related to the sentence that is part and parcel of the supervised release violation. You can't exceed the stat max for your offense on the initial sentencing. So that is certainly part and parcel of the comfort that courts have in concluding. So there just has to be general knowledge and voluntariness that suffices in this context. Who bears the burden proof? You tender the waiver. The defendant says it's not knowing involuntary. Does the defendant have to prove the absence of knowledge or do you have to prove that there was not? In this context, definitely it's the defendant's burden. He agrees we're in the plain error context. Put aside plain, just on the merits. Putting aside plain error. Yeah. Putting aside plain error, I would think it would probably be the government's burden to the extent that... The error here, if there is an error ever in a Rule 32.1 waiver, is that the defendant has not knowingly and voluntarily waived his Rule 32.1 rights and admitted his violations. I think if we're in the non-plain error context and we're just talking about a straight up standard review, I would think if the defendant is claiming error, that it would be the government's burden. We're not there here. Government's burden by a preponderance, I assume. I think that would be right. If the court has no further questions, we would ask that you affirm the judgment below. Thank you. First, thank you for the extra time. Appreciate it. We'll make two or three brief points and then sit down. First is that page A5 and A6, all both come after page A2, 3, and 4, which is where the defendant was obliged to and did indeed admit the violations of the supervised release. We would respectfully submit that any after occurring evidence and ask for the defendant to stand up and say, wait, now I've changed my mind, I'm going to withdraw, is blinking the reality of what happens at proceedings like this. Why is that? The revocation decision will be made by a district court. And if this were going to a jury and the jury heard the admission, sure, you'd be on strong ground. But we generally assume that judges can decide issues. And Judge McFadden had said earlier on, if the defendant wants to contest the violations, that's why we have hearings. That's true and up your honor. But then my second point would be that even the A5 and A6 language that Mr. Goodhand referred to is nothing but a repetition of what had gone in the revocation hearing before. Our view is that the statutory max is inadequate. The first time that the defendant has any understanding that the possibility of an upward variance is a realistic one is later in the hearing at page A8, when the judge says, I want to advise the parties that I'm considering an upward variance. It is asking quite a bit at this point. And then he takes oral argument at which Mr. Lawler says, we recommend that you continue, that you accept the recommendation. Mr. Wang, the Assistant U.S. Attorney says, for the record, we join in that recommendation.  In our view, if this court were to say that the statutory maximum advice is sufficient to get over the totalities of the circumstances bar, we lose. But with respect, the statutory maximum is simply not what is the reality of the proceedings in the district court today. The reality for Mr. Hood and in general is that the statutory max bears little relationship with the documents. I mean, that would have a lot of force if the guidelines were still legally binding, but we're in the post-Booker world. Their advisory courts are pretty, I mean, we're not going to require advice on all the nuances of Gall and Rita and when courts have to follow or should follow the guideline range and when they can go up, right? I wouldn't ask that at all. What we would simply suggest, however, is the defendant be made aware of the fact that the guidelines are fine. That it's a possibility. It's a possibility. And that would be sufficient. With that, we respectfully ask that the court reverse and remand and with directions that Mr. Hood be released. And so, that is what I think. Ginsburg? Mr. Rosenzweig, you were appointed to represent Mr. Hood in this case and the court thanks you for your very able assistance. Thank you very much. The case is submitted.
judges: Katsas, Childs, Ginsburg